DONAT CALEB PORTER )
)
Plaintiff )
)
vs. ) PLAINTIFF'S MEMORANDUM
)
THE UNITED STATES OF )
AMERICA, ET AL )
)
Defendants )
)

## AMENDED CLAIMS FOR RELIEF

Plaintiff moves this Court to accept the amended statement of claim; in response to defendants use of Rule 12 (b)(1) Plaintiff reserves the right to amend its COMPLAINT Rule 15(a) and to assert any additional offenses to the Defendants arguments as further information is obtained or disclosed during the course of this litigation.

    1) The named defendants are co-conspirators in a systematic oppression terrorist group financially sponsored by the Federal and State governments by using American tax payers monies to violate the constitutional rights of individuals. The plaintiff moves the court for reparations and restitution for Donat Caleb Porter for the rights violated by the named defendants. The plaintiff is pro se and solely representing himself, yet the plaintiff reserves the right to do with his civil proceeds as he wishes, the plaintiff chooses to keep a small percentage of his proceeds and wants the remaining proceeds dispersed among other victims that have had their constitutional and human rights violated. The plaintiff seeks in total $50 trillion dollars (and the laws changed under the statutes and human rights treaties asserted in the complaint) and

wants to retain a portion of allotted monies and the remaining dispersed to the millions that have been affected by system oppression, mainly Black Americans, other racial minorities, and low income individuals affected by federal and state government violations. Congress provides federal funding to state governments (monies derived from tax payers (including local municipalities [the City of Concord provides funding to Concord Police Department and Cabarrus County Sheriffs Department, Cabarrus County Court System), various law enforcement departments, various prosecutorial departments (agencies), judicial departments, and public defenders (by posing as ineffective counsel U.S. Const. amend V, VI, and XIV *see* <u>Strickland v. Washington,</u> 466 U.S. 668 (1984) *also see Marshall Dissent*, also federal and state prisons (institutions) to violate the rights of individuals.

    2) The Honorable Judge Martin B. McGee, Assistant District Attorney Jennifer Taylor, and Deputy (ex-Detective) Josh W. Helms have a pattern of violating civil rights and colluding to cover up illegal searches and postponing trial for years until Mr. Ellis finally agreed to accept an "Alford" plea bargain (<u>North Carolina v. Alford</u> 400 U.S. 25 (1970)) just to no longer have to wait for trial (the plaintiff spoke with Ellis) *see North Carolina v. Ellis,* COA 19-59 (18th June 2019). The Honorable Judge Martin B. McGee and Jennifer Taylor used Deputy (ex-Detective) Joshua Helms, James Bailey, Dustin Grooms, James Rominger, Kevin Pfister to perjure under oath at the plaintiff's suppression hearing. The Honorable Judge Martin Martin B. McGee, District Attorney Roxann Vaneekhoven and ADA Jennifer Taylor have allowed for *Brady* violations (the plaintiff submitted Brady motion for body cam and dash cam footage among other needed evidence to prove the search was illegal) *see* <u>Brady v. Maryland</u> 373 U.S. 83 (1963) (U.S. Const. amend. XIV) speedy trail violations (U.S. Const. amend VI & XIV) *see* <u>Klopfer v. North Carolina,</u> 386 U.S. 213 (1967).

The American criminal justice system is riddled with oppression. The named defendants have violated the constitution, various domestic federal laws, and international laws.

- Justice Against Sponsers of Terrorism Act - 18 U.S.C. § 2333
    - *see* Halberstam v. Welch, 705 F.2d 472 (D.C. Cir. 1983)
    - *see* 18 U.S.C. § 2331
- Racketeer Influenced and Corrupt Organizations Act - 18 U.S.C § 1961
- Conspiracy Against Rights -18 U.S.C § 241
- Deprivation of Rights Under Color of Law -18 U.S.C. § 242
- Civil Rights Act of 1866 -42 U.S.C. § 1981-82 (2012)
- Conspiracy to Interfere with Civil Rights- 42 U.S.C § 1985
- Action for Neglect to Prevent - 42 U.S.C § 1986
- Civil Action Action for Deprivation of Rights - 42 U.S.C 1983
- Proceedings in Vindication of Civil Rights 42 U.S.C § 1988
- The Civil Rights Act of (1964), P.L. 88-353, 78 Stat. (1964) Title II, III, V, VI, IX, X
- International Convention on the Elimination of All Forms of Racial Discrimination
    - Dec. 21, 1965, S. Exec. Doc. C, 95-2 (1978); S. Treaty Doc. 95-18; 660 U.N.T.S. 195, 212
- International Covenant on Civil and Political Rights
    - Dec. 16, 1966 999 U.N.T.S. 171; S. Exec. Doc. E, 95-2 (1978); S. Treaty Doc. 95-20; 6 I.L.M. 388 (1967)
- Geneva Convention Relative to the Protection of Civilian Persons in Time of War
    - Aug. 12, 1949 6 U.S.T. 3516; 75 U.N.T.S. 287
- Geneva Convention Relative to the Treatments of Prisoners of War

o Aug. 12, 1949 6 U.S.T. 3316; 75 U.N.T.S. 135

3) The plaintiff doesn't argue that he wasnt a victim of a home invasion and of an attempted murder, yet the plaintiff does argue and believes that the named defendants of Deputy (ex-Detective) Joshua Helms, James Bailey, Dustin Grooms, James Rominger, Kevin Pfister illegally searched his home. The search should be deemed a violation of the U.S. Const. amend IV for various reasons 1) the plaintiff sought medical attention and help from the neighbors in the cul de sac and was no longer at his residence 2) the plaintiff's house was intentionally locked by the plaintiff 3) once the Cabarrus County deputies realized the plaintiff's home was locked upon arrival Deputy Bailey finally slow walked to the neighbors house after the neighbor yelled for his help, the deputy asked for the plaintiff's keys for his home while the plaintiff was dying from a gun shot wound to the chest and abdomen (can be heard on body cam, heard from the witness, and seen on dash cam, yet *Brady v. Maryland,* 373 US. 83 (1963) violations by prosecutors) 4) Deputy Grooms according to law enforcement reports checked the house and noticed it to be locked and secure 5) other deputies surrounded the home even after the house was known to be locked and secured 6) once the plaintiff was with EMS on the way to hospital and only after nearly 15 minutes and after calling Deputy Helms (ex-Dective who has a history of illegal searches) did the deputies magically notice a shoe print on the door. The plaintiff counter argues the deputies actions 1) if the deputies truly believed a exigent circumstance took place they would have immediately entered the plaintiff's home upon arrival 2) the deputies did know for sure what actually happened before arrival 3) Deputy Bailey would not have asked the plaintiff for the keys to the home 4) once the deputies saw that house was locked and secured those deputies should have left the premises 5) the deputies did not inform the magistrate judge

that they waited nearly 15 minutes before entering 6) a properly trained and competent deputy would have noticed a shoe print on a white door and a damaged door frame upon 15 minutes earlier 7) the officers could have gotten a search warrant before entering the home after surrounding the premises 8) in an attempt to cover up this conspiracy was the plaintiff a victim of a shooting was charged in retaliation 9) Detective Helms only wanted to question the plaintiff while the plaintiff was under heavy narcotics prescribed by medical staff for his gun shot wound 10) Detective Helms ignored the plaintiff decision to attempt to invoke the fifth amendment and stated that plaintiff was uncooperative for not self incriminating oneself 11) no attempt has taken place to investigate the shooter only to conspire to charge the plaintiff (the victim of the attempted murder) 12) the same deputies used perjury in attempt to evade law and order during the suppression hearing *see Motion to Suppress, see prosecutors discovery, see submitted trail brief, see United States v. Ventresca,* 308 U.S. 102 (1964), *see Franks v. Delaware,* 438 U.S. 154 (1978), *see Florida v. Jardines,* 569 U.S. 1 (2013), *see Missouri v. McNeely,* 569 U.S. 141 (2013), *Brigham City v. Stuart,* 547 U.S. 398 (2006).

4) The defendants called off EMS which caused unspecified damages and injuries to the plaintiff after suffering from a gun shot wound and asks for the sum of 1) $25 million dollars.

The defendants illegally searched the plaintiff's home in violation of the U.S. Const. amend IV and U.S. Const. amend. XIV and asks for the sum of 2) $25 million dollars.

The defendants stole the plaintiffs property and also destroyed the plaintiffs home and property (spiritual, equipment, technological equipment, and personal belongings) and asks for the sum of 3) $25 million dollars.

Each defendant participated in a ongoing conspiracy to violate the plaintiffs constitutional rights, with false arrest, witness (victim) tampering, in an attempt to coerce and entrap the plaintiff while under heavy narcotics and the plaintiff asks for a sum of 4)$25 million dollars.

The named defendants of Cabarrus County Sheriff's Department had a constitutional obligation to protect and serve the plaintiff and to not conspire with the Honorable Judge Martin B. McGee, District Attorney Roxann Vaneekhoven, and Assistant District Attorney Jennifer Taylor to further violate the plaintiff's constitutional rights through perjury during a suppression hearing and Brady violations. The plaintiff is asking for the sum of 5) $25 million dollars from Deputy (ex-Detective) Joshua Helms, another 6)$25 million from Deputy James Bailey, another 7) $25million from Dustin Grooms, another 8) $25 million from James Rominger, and another 9) $25 million from Kevin Pfister, for emotional distress, lost wages, pain and suffering, and damages incurred by the CCSD defendants.

Sheriff Van Shaw and Ex-Sherriff Brad Riley of CCSD are also co-conspirators in a Racket that fails to properly train their deputies, that take take tax payer monies from the local municipalities, from federal grants, also government provided equipment and weapons to allow their deputies to violate individuals constitutional rights. These actors are covered by the local District Attorneys Office under Roxann Vaneekhoven and granted more protection and coverage

by fellow judge Martin B. McGee and other local court members. These members are part of a local Racket and the plaintiff claims lost wages and the destruction of property causing substantial economic losses under R.I.C.O. The plaintiff is seeking 10) $25 million from Van Shaw and the permanent removal, and another 11) $25 million from Brad Riley.

- ❖ Racketeer Influenced and Corrupt Organizations Act - 18 U.S.C § 1961
- ❖ Conspiracy Against Rights -18 U.S.C § 241
- ❖ Deprivation of Rights Under Color of Law -18 U.S.C. § 242
- ❖ Civil Rights Act of 1866 -42 U.S.C. § 1981-82 (2012)
- ❖ Conspiracy to Interfere with Civil Rights- 42 U.S.C § 1985
- ❖ Action for Neglect to Prevent - 42 U.S.C § 1986
- ❖ Civil Action Action for Deprivation of Rights - 42 U.S.C 1983
- ❖ Proceedings in Vindication of Civil Rights 42 U.S.C § 1988
- ❖ The Civil Rights Act of (1964), P.L. 88-353, 78 Stat. (1964) Title II, III, V, VI, IX, X
- ❖ Justice Against Sponsors of Terrorism Act 18 U.S.C. § 2333

$275 million from the Members of Cabarrus County Sheriffs Department

6) The City of Concord provides tax payer monies to local law enforcement departments and the Cabarrus County court system and members which is in direction violation of

- ❖ Racketeer Influenced and Corrupt Organizations Act - 18 U.S.C § 1961
- ❖ Conspiracy Against Rights -18 U.S.C § 241
- ❖ Deprivation of Rights Under Color of Law -18 U.S.C. § 242
- ❖ Civil Rights Act of 1866 -42 U.S.C. § 1981-82 (2012)
- ❖ Conspiracy to Interfere with Civil Rights- 42 U.S.C § 1985
- ❖ Action for Neglect to Prevent - 42 U.S.C § 1986
- ❖ Civil Action Action for Deprivation of Rights - 42 U.S.C 1983
- ❖ Proceedings in Vindication of Civil Rights 42 U.S.C § 1988
- ❖ The Civil Rights Act of (1964), P.L. 88-353, 78 Stat. (1964) Title II, III, V, VI, IX, X
- ❖ Justice Against Sponsors of Terrorism Act 18 U.S.C. § 2333

The plaintiff is asking for $100 million dollars minus the price for Barbra Scotia College, so the plaintiff can start a community center with the proceeds or the plaintiff will accept the full amount.

7) The plaintiff is seeking damages in the amount of $25 million from District Attorney Roxann Vaneekhoven and her permanent from office, the plaintiff is seeking the amount of $25 million from Assistant District Attorney Jennifer Taylor, the plaintiff is also seeking the amount of $25 million from Assistant District Attorney Casey Wallace for the constitutional violations. The violations ranging from but not solely to Brady, Speedy Trial, Religious Freedoms, Equal Protections, numerous rights that will be brought to light at trial and conspiring with the judges Martin B. McGee and Brent Cloninger.

The District Attorney Members are in violation of:

- ❖ Racketeer Influenced and Corrupt Organizations Act - 18 U.S.C § 1961
- ❖ Conspiracy Against Rights -18 U.S.C § 241
- ❖ Deprivation of Rights Under Color of Law -18 U.S.C. § 242
- ❖ Civil Rights Act of 1866 -42 U.S.C. § 1981-82 (2012)
- ❖ Conspiracy to Interfere with Civil Rights- 42 U.S.C § 1985
- ❖ Action for Neglect to Prevent - 42 U.S.C § 1986
- ❖ Civil Action Action for Deprivation of Rights - 42 U.S.C 1983
- ❖ Proceedings in Vindication of Civil Rights 42 U.S.C § 1988
- ❖ The Civil Rights Act of (1964), P.L. 88-353, 78 Stat. (1964) Title II, III, V, VI, IX, X
- ❖ Justice Against Sponsors of Terrorism Act 18 U.S.C. § 2333

8) The plaintiff is seeking damages in the amount of $25 million from Martin B. McGee also the permanent removal of office and the amount of $25 million from Brent Cloninger and his permanent removal from office in conspiring with the members of the government, members of the District Attorneys Office, and members of local law enforcement to violate the rights of the plaintiff. The violations are not solely limited to:

- ❖ Racketeer Influenced and Corrupt Organizations Act - 18 U.S.C § 1961
- ❖ Conspiracy Against Rights -18 U.S.C § 241
- ❖ Deprivation of Rights Under Color of Law -18 U.S.C. § 242
- ❖ Civil Rights Act of 1866 -42 U.S.C. § 1981-82 (2012)
- ❖ Conspiracy to Interfere with Civil Rights- 42 U.S.C § 1985
- ❖ Action for Neglect to Prevent - 42 U.S.C § 1986
- ❖ Civil Action Action for Deprivation of Rights - 42 U.S.C 1983
- ❖ Proceedings in Vindication of Civil Rights 42 U.S.C § 1988
- ❖ The Civil Rights Act of (1964), P.L. 88-353, 78 Stat. (1964) Title II, III, V, VI, IX, X

- ❖ Justice Against Sponsors of Terrorism Act 18 U.S.C. § 2333
- ❖ Punishment for Perjury N.C.G.S. § 14-209
- ❖ Subornation of Perjury N.C.G.S. § 14-210

9) The defendant Benjamin Goff even though is represented by defense counsel, he himself is a defense counselor that has been appointed by Cabarrus County to represent the civilians of Cabarrus County that are innocent until proven guilty. Defendant Goff is a paid associate of the ongoing terroristic group and racket that perpetrates a systemic criminal syndicate that strips individuals of basic human and constitutional rights. Defendant Goff receives payment from the state and federal government when operating as court appointed counsel to represent the people, instead the defendant Goff willfully chooses to neglect his oath to the constitution by purposely failing his appointed clients. Goff chooses neglect, conspiracy, collusion, and subservient actions that embodies his choice of being ineffective counsel for those needing life, liberty, and equal justice under the law. The defendant Benjamin Goff is a co-conspirator with District Attorney Roxann Vaneekhoven and Assistant District Attorney Jenifer Taylor and the Honorable Judge Martin B. McGee. Benjamin Goff was appointed by the Cabarrus County Court to the plaintiff, the defendant failed to argue for the plaintiff at the probable cause hearing. The defendant posed as ineffective counsel *see Strickland v. Washington,* 466 U.S. 668 (1984) by insisting and attempting to coerce the plaintiff into taking a plea bargain instead of taking the necessary pre-trail steps and the proper step for trail. The defendant still has loyalties to his ex-employer District Attorney Roxann Vaneekhoven. The defendant Goff had previously prosecuted the plaintiff while working for Roxann Vaneekhoven for marijuana (the plaintiff was 16 and was intimidated into taking a plea bargain by the Goff also his mother was coerced as well) and purposely chose to pose as a road block in the pending cases 18CRS 052885 and 18CRS 052926 *North Carolina v. Donat Caleb Porter.* The plaintiff

informed the defendant Goff of the conflict of interest between the plaintiff and the defendant Roxann Vaneekhoven having went to the same church for nearly a decade. The defendant informed the defendant Martin B. McGee the incompetence and obstruction of justice that Benjamin Goff posed, McGee dismissed the grievances of the plaintiff in order to protect his coconspirator Goff. The court then appointed counsel Matthew Ginn, the plaintiff found out within a week that Ginn had been disbarred, has a extensive case load, that Ginn didn't even have a paralegal, an assistant, Ginn didn't even have a business card, the plaintiff was given a sticky note with his number written on it. These felony charges pose a substantial burden on the plaintiff if wrongfully convicted, the plaintiff decided that the Cabarrus County court system was purposely imposing a burden by assigning two incompetent attorneys. The plaintiff decided to use what he learned from his Social Work policy classes at Winston-Salem State University and from his professional career and represent as pro-se. Defendant Goff receives tay payer monies from state and federal government to help keep the District Attorneys Roxann Vaneekhoven conviction rate high by coercing those charged into accepting plea bargain or posing as ineffective counsel during the court process to assist his ex-employer. The plaintiff is seeking $25 million in damages from co-conspirator/terrorist group and racket participant from defendant Goff.

- ❖ Racketeer Influenced and Corrupt Organizations Act - 18 U.S.C § 1961
- ❖ Conspiracy Against Rights -18 U.S.C § 241
- ❖ Civil Rights Act of 1866 -42 U.S.C. § 1981-82 (2012)
- ❖ Conspiracy to Interfere with Civil Rights- 42 U.S.C § 1985
- ❖ Action for Neglect to Prevent - 42 U.S.C § 1986
- ❖ Proceedings in Vindication of Civil Rights 42 U.S.C § 1988
- ❖ The Civil Rights Act of (1964), P.L. 88-353, 78 Stat. (1964) Title II, III, V, VI, IX, X
- ❖ Justice Against Sponsors of Terrorism Act 18 U.S.C. § 2333

10) The Attorney General Joshua Stein is the leading law enforcement officer for the state of North Carolina. The attorney general swore an to protect the constitutional rights of North

Carolinians, these laws enacted by the legislative branch and enforced by the executive branches are unconstitutional. Theses laws and practices mirror the policies and measures enacted by the federal government which are still unconstitutional. The plaintiff is seeking that the North Carolina Department of Justice put in polices and procedures to make it less of a burden for constituents of North Carolina to inform and address unconstitutional practices by those represented by the Color of Law. The plaintiff is also seeking that theses laws be struck down as being unconstitutional. The plaintiff is also seeking damages of $1 billion dollars.

- ❖ Racketeer Influenced and Corrupt Organizations Act - 18 U.S.C § 1961
- ❖ Conspiracy Against Rights -18 U.S.C § 241
- ❖ Deprivation of Rights Under Color of Law -18 U.S.C. § 242
- ❖ Civil Rights Act of 1866 -42 U.S.C. § 1981-82 (2012)
- ❖ Conspiracy to Interfere with Civil Rights- 42 U.S.C § 1985
- ❖ Action for Neglect to Prevent - 42 U.S.C § 1986
- ❖ Civil Action Action for Deprivation of Rights - 42 U.S.C 1983
- ❖ Proceedings in Vindication of Civil Rights 42 U.S.C § 1988
- ❖ The Civil Rights Act of (1964), P.L. 88-353, 78 Stat. (1964) Title II, III, V, VI, IX, X
- ❖ Justice Against Sponsors of Terrorism Act 18 U.S.C. § 2333

11) The Attorney General of the United States is the leading law enforcement officer of the nation, the plaintiff is submitting a civil complaint under the Petition Clause and other various constitutional clauses for the unconstitutional statues and practices taking place. This Middle District of North Carolina has jurisdiction but has the responsibility to address the federal questions that are be submitted by the plaintiff. Policies and practices enacted by the United States government are unconstitutional and illegal under ratified international human rights treaties; the actions burden millions of American citizens and foreign nationals causing international and domestic terrorism upon individuals. The plaintiff is seeking relief from the illegal polices and practices taking place, the Court and Congress must address this complaint and *see entire International Convention on the Elimination of All Forms of Racial*

*Discrimination* "shall take effective measures to review governmental, national and local policies, and to amend, rescind or nullify any laws and regulations which have the effect of creating or perpetuating racial discrimination wherever it exists" *see entire International Covenant on Civil and Political Rights.* These practices not only affect American and foreign nationals but also the leading stature of America against the world and foreign governments; these practices also affect Congresses oath to provide for the common Defense and general Welfare of the United States. The plaintiff is seeking $50 trillion in reparations for the centuries of oppression that has never stopped and still continues. The plaintiff is a Black man in America whose lineage has suffered from Pre and Post Civil War (Slavery has never stopped), Jim Crow, and the War on Drugs (the plaintiff has suffered damages directly). The plaintiff attempts to detail historical context on how the Controlled Substance Act was enacted and how the "War on Drugs" and "Tough on Crime" policies were sanctioned by the State and Federal government. The history of the Controlled Substance Act was passed in response to the Civil Rights movement of the 1950's and 1960's as retaliation for Black liberation. The plaintiff details in his legal works and case briefs on how the struggle for liberation predates the Civil War and how the State and Federal government failed to protect the Blacks. In response to the 13th Amendment states passed Black Codes (laws) that incarcerated Black Americans for the convict leasing system (another form of slavery), Congress in response to domestic terrorism and Black Codes passed the Civil Rights Acts of the 1860's-1870's, the 14th, and the 15th Amendment. The federal government didn't protect the constitutional and civil rights for Black Americans for nearly a century, causing Jim Crow and racial segregation until SCOTUS decision of <u>Brown v. Board of Education,</u> 347 U.S. 483 (1954) and Congress's attempted to desegregate with the Civil Rights laws of the 1950's-1960's. Congress under the direction of President Richard Nixon passed the

Controlled Substance Act in retaliation to Vietnam dissenters and the Civil Rights movement and leaders. Other presidential administrations with the assistance on Congress enacted more "War on Drugs" and "Tough on Crime" polices that are unconstitutional and have yet to be nullified. These same policies and actions are directly affecting the plaintiff. These same policies affect populations domestically and internationally causing international and domestic terrorism funded by the State and Federal governments with tax payers dollars. Members of the U.S government colluded with and confirmed with foreign drug cartels and narco drug dealers that has created wars and conflicts in various Latin countries created havoc and terror within American boarders and internationally. Congress has enacted these policies and funded Ed these actions causing terrorism such as mass incarcerating millions. Of racial mini or ties The plaintiff will be submitting (has submitted some already) legal works, case briefs, and evidence for findings of fact throughout this litigation process.

- ❖ Racketeer Influenced and Corrupt Organizations Act - 18 U.S.C § 1961
- ❖ Conspiracy Against Rights -18 U.S.C § 241
- ❖ Deprivation of Rights Under Color of Law -18 U.S.C. § 242
- ❖ Civil Rights Act of 1866 -42 U.S.C. § 1981-82 (2012)
- ❖ Conspiracy to Interfere with Civil Rights- 42 U.S.C § 1985
- ❖ Action for Neglect to Prevent - 42 U.S.C § 1986
- ❖ Civil Action Action for Deprivation of Rights - 42 U.S.C 1983
- ❖ Proceedings in Vindication of Civil Rights 42 U.S.C § 1988
- ❖ The Civil Rights Act of (1964), P.L. 88-353, 78 Stat. (1964) Title II, III, V, VI, IX, X
- ❖ Justice Against Sponsors of Terrorism Act 18 U.S.C. § 2333

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

1. For the injunction of relief for the plaintiff against the named defendant Roxann Vaneekhoven for the various constitutional violations including speedy trial violationsin *North Carolina v. Donat Caleb Porter,* 18CRS 052885 , 18CRS 052926, 19CRS 716049, 19CRS 716050 see *Klopfer v. North Carolina,* 386 U.S. 213 (1967).

2. For the injunction of relief for sacramental marijuana use *see Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418 (2006).

3. For compensatory damages, general damages, expenses, for past, present, and future pain and suffering, and other damages in excess of $275 million from the named defendants of the Cabarrus County Sheriff Department Van Shaw (removal from position office), Brad Riley, Joshua Helms, James Bailey, Dustin Grooms, James Rominger, Kevin Pfister.

4. For compensatory damages, for general damages, for expenses, for past, present, and future pain and suffering, and other damages in excess of $75 million from the named defendants of the Cabarrus County District Attorney's Office; Roxann Vaneekhoven (removal from office), Jennifer Taylor, Casey Wallace.

5. For compensatory damages, for general damages, for expenses, for past, present, and future pain and suffering, and other damages in excess of $100 million (possibly minus the cost of Barbra Scotia College to build a community center) from the named defendant City of Concord.

6. For compensatory damages, for general damages, for expenses, for past, present, and future pain and suffering, and other damages in excess of $25 million from the named defendant Benjamin Goff.

7. For compensatory damages, for general damages, for expenses, for past, present, and future pain and suffering, and other damages in excess of $1 billion dollars from the named defendant Joshua Stein or State Treasurer.

8. For compensatory damages, for general damages, for expenses, for past, present, and future pain and suffering, and other damages in excess of $50 trillion dollars from the office of the future Attorney General (under future Biden-elect). The plaintiff wants to retain 10% of his proceeds and to give the remaining profits to to Black Americans affected by systemic oppression and terrorism; also racial minorities and low income individuals affected by the "War on Drugs".

9. For the State of North Carolina to declare the "War on Drug" and the Controlled Substance Act to be unconstitutional.

10. For the federal government to declare the actions and practices regarding the "War on Drugs" and the "Tough on Crime" polices that causes domestic and international terrorism is unconstitutional. The use of universal background checks without the possibility to have any form of expungement to be declared as unconstitutional and considered to be cruel and usual punishment and a form of modern day slavery. For the federal government to amend or nullify any policy or practice deemed to be unconstitutional.

11. Plaintiff's injuries have resulted in damages which be proven at trial.

12. For interest at the statutory rate; and

13. For such other and further relief as this court deems just and equitable.

SUBMITTED THIS DAY OF November 30th 2020

/s/ Donat "Caleb" Porter
DONAT CALEB PORTER-BSW
Pro Se
President
Donatus Polymath & Company
P.O. BOX 2028
Concord, NC 28026
(704) 315-1099
donatuspolymathco@outlook.com